UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIZABETH ABAR,

                              Plaintiff,

v.                                                          7:15-CV-0095
                                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                               OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN          VICTORIA M. ESPOSITO, ESQ.
NEW YORK, INC.
  Counsel for Plaintiff
17 Hodskin St.
P.O. Box 648
Canton, NY 13617

U.S. SOCIAL SECURITY ADMIN.                ANDREEA LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Elizabeth Abar

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted and Defendant's motion is denied, in the extent that remand is recommended under Sentence Four of 42 U.S.C. § 405(g).

Plaintiff seeks remand solely for calculation of benefits. (Dkt. No. 12 at 25 [Pl.'s Mem. of Law].) Remand for calculation of benefits is warranted where the record is fully developed and further administrative proceedings would serve no useful purpose. *Williams v. Apfel,* 204 F.3d 48, 50 (2d Cir.1999); *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980) (Court may order benefits be paid "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose"). Here, the record does not compel one conclusion. For the reasons stated herein, there is conflicting evidence that needs to be properly weighed by the ALJ; therefore, remand for further proceedings under Sentence Four of 42 U.S.C. § 405(g) is recommended.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on October 22, 1979. (T. 130.) She received her GED diploma. (T. 244.) Generally, Plaintiff's alleged disability consists of right arm and hand impairment, bipolar disorder, anxiety, and a psychotic disorder. (*Id.*) Her alleged disability onset date is October 2, 2007. (T. 130.) She previously worked as a waitress, cook, and in housekeeping. (T. 245.)

### B.    Procedural History

On August 17, 2011, Plaintiff applied for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  (T. 130.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On December 20, 2012, and for a supplemental hearing on April 1, 2013, Plaintiff appeared before the ALJ, John P. Ramos.  (T. 68-114, 46-67.)  On April 25, 2013, ALJ Ramos issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 22-45.)  On December 19, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 27-41.)  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2011.  (T. 27.)  Second, the ALJ found that Plaintiff had the severe impairments of status-post fracture of the right wrist, panic disorder NOS, bipolar I disorder, and post-traumatic stress disorder ("PTSD").  (T. 28.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 29-33.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform: light work, but was limited to lifting a maximum of ten pounds frequently with her left upper extremity; she could occasionally reach, push, pull, grasp, or perform fine manipulation with the right hand and arm; and she had no

limitations on the use of her left arm and hand. (T. 33.)[1]  Further, the ALJ determined

Plaintiff could:

> understand and follow simple instructions and directions; perform simple
> tasks with supervision and independently; maintain attention/concentration
> for simple tasks; regularly attend to a routine and maintain a schedule;
> [could] relate to and interact with others to the extent necessary to carry
> out simple tasks, but should avoid work requiring more complex
> interaction or joint efforts to achieve work goals; she should not have
> interaction with the public; and she [could] handle reasonable levels of
> simple work-related stress, in that she [could] make simple decisions
> directly related to the performance of simple tasks in a position with
> consistent job duties that [did] not require [her] to supervise or manage the
> work of others.

(*Id.*)  Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there

were jobs that existed in significant numbers in the national economy Plaintiff could

perform.  (T. 39-41.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment

on the pleadings.  First, Plaintiff argues the ALJ erred in weighing the opinion evidence

in the record; specifically, the ALJ erroneously afforded too much weight to the non-

examining State agency consultant and afforded insufficient weight to Plaintiff's treating

providers.  (Dkt. No. 12 at 21-23 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ

erred in relying on the testimony of a vocational expert ("VE").  (*Id.* at 23-24.)  Third, and

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full
or wide range of light work, you must have the ability to do substantially all of these activities. If someone
can do light work, we determine that he or she can also do sedentary work, unless there are additional
limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §
416.967(b).

lastly, Plaintiff argues the ALJ failed to fulfill his affirmative duty to develop the record. (*Id.* at 24-25.)

## B.   Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the ALJ properly considered the medical evidence in the record.  (Dkt. No. 13 at 6-13 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ was not required to develop the record further.  (*Id.* at 14-17.)  Third, and lastly, Defendant argues the ALJ properly relied upon the testimony of a VE.  (*Id.* at 17-20.)

## III.   RELEVANT LEGAL STANDARD

## A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]

6

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.  ANALYSIS

### A.  Medical Evidence in the Record

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6). The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *Id.* at § 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion of a treating source should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the

opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

### i.)    Non-examining State Agency Medical Consultant T. Bruni

The ALJ afforded the opinion of the non-examining State agency medical consultant, T. Bruni, "considerable weight."  (T. 32, 37.)  The ALJ reasoned that T. Bruni had "program and professional expertise" and her opinion was consistent with Plaintiff's activities of daily living.  (T. 32.)  The ALJ also reasoned T. Bruni's opinion was consistent with the opinion of consultative examiner, Dennis Noia, Ph.D.  (T. 38.)

Plaintiff challenges the ALJ's finding on three fronts.  First, Plaintiff argues the ALJ erred in affording T. Bruni's opinion weight because T. Bruni's education and training were not clear from the record.  (Dkt. No. 12 at 21-22 [Pl.'s Mem. of Law].)  Second, Plaintiff argues a non-examining source cannot be afforded substantial weight. (*Id.* at 22.)  Third, Plaintiff argues T. Bruni's opinion was not consistent with Dr. Noia's opinion.  (*Id.* at 23.)

On November 18, 2011, T. Bruni opined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions.  (T. 371.)  In the area of concentration and persistence, T. Bruni opined Plaintiff had moderate limitations in her ability to carry out detailed instructions, and moderate limitations in her ability to complete a normal workday and workweek.  (T. 371-372.)  T. Bruni opined Plaintiff was moderately limited in her ability to interact appropriately with the general public, and in her ability to maintain socially appropriate behavior and to adhere to basic standards of

neatness and cleanliness. (T. 372.) T. Bruni stated she based her conclusions on Plaintiff's outpatient mental health treatment and Dr. Noia's opinion. (T. 373.)

Although the ALJ referred to T. Bruni as "Dr. Bruni," the record never afforded T. Bruni that title. In the record T. Bruni was referred to as "T. Bruni," and "T. Bruni, Psychology." (T. 373, 375, 376, 377.) Plaintiff asserts that "the opinion of an examiner whose title or qualifications are not set forth on the RFC form is not entitled to any weight." *Lyons v. Colvin*, No. 7:13-CV-0614, 2014 WL 4826789, at *8 (N.D.N.Y. Sept. 29, 2014) (citing *Bennett v. Astrue*, No. 1:06-CV-0649, 2009 WL 1035106, at *11 (N.D.N.Y. April 17, 2009).

To be sure, the RFC form completed by T. Bruni did not set forth her qualifications; however, the record did indicate T. Bruni's qualifications. The psychiatric review technique form completed by T. Bruni included "code 38" in the signature line. (T. 377.) In a similar case out of the District of Vermont, a plaintiff challenged the ALJ's reliance on the opinion of T. Bruni for the same reasons as the Plaintiff here. *Bessette v. Colvin*, No. 2:13-CV-0250, 2015 WL 867172, at *10 (D. Vt. Feb. 27, 2015). In *Bessette*, the Court held T. Bruni's credentials were apparent from the record, because "code 38" corresponded with the medical specialty "Psychology" according to the Social Security Administration's Program Operations Manual System ("POMS"). *Bessette*, 2015 WL 867172, at *10 (citing POMS DI 24501.004). The *Bessette* Court further concluded that New York State's "Office of Professionals" website listed "Bruni Terri Linden" as being licensed to practice psychology in New York, which under POMS was a proper method of verifying that an individual was an acceptable medical source. *Id.*, (

citing POMS DI 24501.004(B)(2)).[2]  The *Bessette* Court concluded that the ALJ did not

err in referring to T. Bruni as Dr. Bruni and providing weight to her opinion, because the

record did indicate that T. Bruni was a licensed psychologist and therefore an

acceptable medical source.

Here, as in *Bassette*, T. Bruni provided an opinion as a non-examining State

medical examiner at the request of the Social Security Administration.  Also, as in

*Bassette*, T. Bruni's title was not obvious from the record; however, T. Bruni indicated

her specialty as "code 38" which, according to the Social Security Administration, refers

to a specialty in psychology.  Further, New York State Office of the Professionals listed

T. Bruni as being licensed to practice psychology.  Therefore, Plaintiff's first argument,

that T. Burni's opinion cannot be provided any weight because the record did not

provide her qualifications, fails.  However, the question still remains as to whether or not

the ALJ erred in providing substantial weight to a non-examining State agency medical

consultant.

Plaintiff's second prong of her argument asserts that a non-examining State

agency medical consultant "cannot constitute substantial evidence."  (Dkt. No. 12 at 22

[Pl.'s Mem. of Law].)  Plaintiff relies on *Petersen v. Astrue*, 2 F.Supp.3d 223, 236

(N.D.N.Y. 2012), which held that although "reports from nonexamining consultants are

entitled to some evidentiary weight, they cannot constitute substantial weight."[3]

---

[2]     The New York State "Office of the Professions" website lists BRUNI TERRI LINDEN, license no. 011335, date of licensure June 26, 1992. *See* NYSED.gov, Office of the Professions, Online Services, *available at* http://www.nysed.gov/coms/op001/opsc2a?profcd=68&plicno=011335&namechk=BRU (last visited Jan. 27, 2016).

[3]     Plaintiff also relies on the Second Circuit's decision in *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987).  However, the decision in *Hidalgo* was limited by the changes in the 1991 Social

However, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), and 416.927(f)(2); *see Henry v. Astrue*, 32 F. Supp. 3d 170, 181-82 (N.D.N.Y. 2012); *see also Leach ex rel. Murray v. Barnhart,* No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Further, the opinion of non-examining sources may override a treating source's opinion, as long as the opinion is supported by evidence in the record. *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

Plaintiff's second prong of her argument, that a non-examining State agency medical consultant's opinion, such as T. Bruni's, can never constitute substantial evidence also fails. However, for the opinion of a non-examining State agency medical consultant to constitute substantial evidence it must be supported by the evidence in the record.

Plaintiff argues T. Bruni's opinion was not supported by evidence in the record because the record was "stale" and the opinion was inconsistent with the overall record. (Dkt. No. 12 at 22-23 [Pl.'s Mem. of Law].) T. Bruni issued her opinion on November 17, 2011. (T. 371.) At the time T. Bruni provided her opinion, the record contained two medical source statements from providers at GMHC (T. 348-354, 364-370), Dr. Noia's

Security Regulations permitting the opinions of nonexamining sources to override treating sources' opinions. *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

opinion (T. 360-363), and medical treatment notations regarding Plaintiff's physical impairment(s) (T. 291-347). The record did not contain medical treatment notations from Plaintiff's mental health providers at Gouverneur Mental Health Clinic ("GMHC"), including Dr. Pierson's November 2012 medical source statement (T. 398-428, 429-459, 460-464), and emergency room records from Claxton-Hepburn Medical Center (T. 472-503). In her functional capacity assessment, T. Bruni summarized Plaintiff's medical record as having no psychiatric hospitalizations and has a history of outpatient mental health treatment since early 2011. (T. 373.) T. Bruni also referred to the mental status examination by Dr. Noia. (*Id.*)

Dr. Pierson's November 2012 medical source statement indicated that Plaintiff had severe, or possibly marked, limitations in many areas of functioning. (T. 460-464.) Dr. Pierson's statement, and the ALJ's weighing of her statement, are discussed in more detail in Part IV.A.ii. Dr. Pierson's highly restrictive limitations were vastly different than the limitations imposed by T. Bruni. This Court cannot conclude that T. Bruni's statement would have remained unchanged had she reviewed Dr. Pierson's statement. Therefore, substantial evidence did not support the State agency medical consultant's statement because it was based on a record which did not include pertinent medical evidence that strongly contrasted the limitations imposed by the State agency medical consultant; and further, any error was not harmless because it cannot be determined whether the State agency medical consultant's opinion would have remained the same had she reviewed those records.

"The timeliness of evidence is ... a factor that courts have cited in finding a lack of substantial evidence in the record to affirm a decision on benefits by the

Commissioner." *Jones v. Colvin*, No. 6:14-CV-06316, 2015 WL 4628972, at *4 (W.D.N.Y. Aug. 3, 2015); *see Acevedo v. Astrue,* No. 11-CV-8853, 2012 WL 4377323, at *16 (S.D.N.Y. Sept. 4, 2012) (citing, *inter alia, Griffith v. Astrue,* No. 08-CV-6004, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. Mar.31, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence.").

Social Security Ruling ("SSR") 96-6p provides further illumination and states:

the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence *including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency*, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

SSR 96-9p (S.S.A. 1996) (emphasis added). Therefore, T. Bruni based her opinion on a "stale" record and substantial evidence did not support her conclusion. Further, for the reasons stated in Part IV.A.ii, the ALJ did not properly assess the opinion evidence provided by Dr. Pierson. For these reasons, and the reasons stated hereafter, remand is recommened.

Plaintiff next makes only a conclusory argument that T. Bruni's opinion was inconsistent with the observations and opinions of Plaintiff's primary care providers and fails to provide any specific examples of inconsistencies. (Dkt. No. 12 at 23 [Pl.'s Mem. of Law].) However, for the reasons stated above, this Court agrees that T. Bruni's opinion was inconsistent with Dr. Pierson's medical source statement.

The ALJ concluded T. Bruni's opinion was supported by evidence in the record, specifically the opinion of Dr. Noia. (T. 38.) On October 6, 2011, Dr. Noia performed a psychiatric evaluation of Plaintiff. (T. 360-363.) Based on his examination, Dr. Noia opined Plaintiff was capable of understanding and following simple instructions and directions. (T. 362.) Dr. Noia opined Plaintiff could perform simple tasks and some complex tasks with supervision and independently. (*Id.*) He opined she was able to maintain attention and concentration. (*Id.*) Dr. Noia opined Plaintiff could regularly attend to a routine and maintain a schedule, and was capable of learning new tasks. (T. 363.) Dr. Noia opined Plaintiff could make appropriate decisions, relate to and interact moderately well with others, and she would have some difficulty dealing with stress. (*Id.*)

The ALJ afforded Dr. Noia's opinion "significant weight." (T. 37.)[4] In support of his weight determination, the ALJ stated, "Dr. Noia's assessment of [Plaintiff's] mental functioning supports an ability on the part of [Plaintiff] to perform simple work with some moderate socialization limits and some limitations in dealing with stress, all of which is consistent with the residual functional capacity that the undersigned has formulated for [Plaintiff]." (T. 37.) The ALJ's reasoning for affording Dr. Noia's opinion caused this Court to pause.

Dr. Noia's opinion did support the ALJ's RFC determination; however, the ALJ's determination rests on circular reasoning. It is improper for an ALJ to provide weight to a medical opinion based on the opinions consistency with the RFC, because such reasoning is "circular and flawed." *Faherty v. Astrue*, No. 11-CV-2476, 2013 WL

_____

[4]        Of note, Plaintiff does not argue the ALJ erred in affording Dr. Noia's opinion "significant weight."

14

1290953, at *14 (E.D.N.Y. Mar. 28, 2013) (holding that the ALJ improperly gave weight to a consultative examiner based on the opinion's consistency with the ALJ's RFC because the ALJ should use medical opinions to determine a plaintiff's RFC, and therefore, cannot give medical opinions weight based on their consistency with the RFC.)[5]

To be sure, where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). After a thorough review of the ALJ's determination, this Court is unable to decipher the ALJ's reasoning for affording "significant weight" to Dr. Noia's opinion, or even if the ALJ adhered to the factors outlined in the Regulations. Although the ALJ discussed the medical evidence in the

---

[5]      An ALJ's conclusion to afford a medical opinion weight because it was consistent with the RFC may be construed as harmless error. Courts in this district have concluded that in making a credibility determination an ALJ's conclusion that a plaintiff is credible to the extent a plaintiff's statements are consistent with the RFC determination may be harmless error if the Court is able to determine the ALJ's reasons from the remainder of the decision.

      This reasoning may be applied in the weight determination area as well; however, this Court need not reach this issue because the ALJ erred as a matter of law and the ALJ's reasoning cannot be determined from the remainder of his decision. *See Gehm v. Astrue*, 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue*, 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013) ("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that he improperly arrived at his RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

      Courts have concluded that despite this language, an ALJ's credibility determination may still be proper, if the ALJ provided a detailed discussion of a plaintiff's credibility "explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270. Further, Courts have held that it is the function of the ALJ, not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the plaintiff. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982).

record, and other evidence in the record such as Plaintiff's testimony, he provided no analysis which would indicate he weighed Dr. Noia's opinion with this evidence in mind.

The ALJ's error was not harmless. The ALJ based his RFC determination on the opinion of Dr. Noia, reasoning it was consistent with the RFC, and the ALJ based his RFC determination on the opinion of T. Bruni, reasoning it was supported by Dr. Noia's opinion. The ALJ also relied, in part, on Dr. Noia's opinion to support his determination of affording only "little weight" to the medical source statements signed by Dr. Pierson. (T. 38.)

This Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a "reasonable basis for doubt" as to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 280 (N.D.N.Y. 2009) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987)). Therefore, remand is recommended for a proper evaluation of Dr. Noia's opinion, and other subsequent opinion evidence in the record, in accordance with the factors outlined in the Regulations.

### ii.)     Treating Sources at Gouverneur Mental Health Clinic

Plaintiff argues the ALJ failed to consider the medical source statement co-signed by Jill Brabant, NPP and failed to provide the statement "extra consideration." (Dkt. No. 12 at 23 [Pl.'s Mem. of Law].)

Although a nurse practitioner may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security Regulations. A "treating source" is defined as the plaintiff's "own physician, psychologist, or other acceptable medical source who provides [plaintiff], or has

provided [plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. § 416.902. There are five categories of "acceptable medical sources." *Id.* at § 416.913(a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id.* at § 416.913(d)(1). The Second Circuit has recognized that the opinions of a nurse practitioner who regularly treats a plaintiff is entitled to "some extra consideration." *Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir.1983).

Contrary to Plaintiff's assertion, the ALJ did evaluate the November 3, 2011, medical source statement. The ALJ referred to the statement in his decision and provided an analysis thereof. (T. 34, 38.) Although the ALJ did not mention Nurse Brabant by name, he was aware that Plaintiff received treatment from a "licensed social worker or a nurse practitioner" at GMHC (T. 38.) Therefore, the failure to recognize Nurse Brabant by name was not, in and of itself, error.

Although the ALJ did not commit legal error in failing to mention Nurse Brabant by name, the ALJ's analysis of the medical source statement she co-signed and other medical source statement's by Dr. Pierson's, specifically the statement dated November 29, 2012, was inadequate.

Dr. Pierson opined Plaintiff suffered from bipolar disorder, panic disorder, and PTSD. (T. 460.) Dr. Pierson opined that Plaintiff suffered from "high levels of anxiety, irritability and not sleeping well." (*Id.*) Symptoms of Plaintiff's anxiety included pounding heart, sweating, flushed face, hives, not sleeping, fears regarding her

children, and poor concentration.  (*Id.*)  Dr. Pierson opined that given Plaintiff's history and environment her prognosis was poor.  (T. 461.)

Dr. Pierson provided limitations in Plaintiff's ability to function in a variety of areas.  Dr. Pierson opined Plaintiff had moderate limitations in her ability to perform activities of daily living.  (*Id.*)[6]  Dr. Pierson opined Plaintiff had marked limitations in her ability to maintain social functioning.  (T. 462.)  Dr. Pierson opined Plaintiff had extreme limitations in her ability to maintain concentration, persistence, or pace.  (*Id.*)

Dr. Pierson opined Plaintiff "continually experienced" episodes of deterioration or decompensation that caused her to withdraw from that situation or experience exacerbation of signs and symptoms.  (T. 462.)  Dr. Pierson opined Plaintiff was "completely unable to function independently outside the area of the home."  (T. 463.) Dr. Pierson opined Plaintiff was "subject to such marginal adjustment that even a minimal increase in mental demands or change in environment [was] likely to cause [her] to decompensate."  (*Id.*)  Dr. Pierson opined Plaintiff did not have a history of being unable to function outside a highly supportive arrangement.  (*Id.*)

Dr. Pierson provided limitations on Plaintiff's ability to function in a work setting on a regular basis.  Dr. Pierson opined Plaintiff had "severe" limitations in the following: her ability to understand, remember and carry out instructions; her ability to respond appropriately to supervision; her ability to respond appropriately to co-workers; her ability to satisfy an employer's normal quality, production, and attendance standards; her ability to respond to customary work pressure; her ability to perform complex tasks

---

[6]       The statement completed by Dr. Pierson provided the following definitions: moderate impairment is one which affects, but does not preclude the ability to function; marked impairment seriously affects the ability to function; an extreme impairment precludes the ability to function.  (T. 462.)

on a sustained basis in a full-time work setting; and her ability to perform simple tasks on a sustained basis in a full-time work setting.  (T. 463-464.)  Dr. Pierson stated that Plaintiff's limitations in these areas may be reduced to "marked" limitations if her life situation could change and she had a better support system.  (T. 464.)

The ALJ provided Dr. Pierson's medical source statements "little weight" for various reasons, namely stating Dr. Pierson's findings were inconsistent with the findings of Dr. Noia and T. Bruni.  (T. 38.)  The ALJ also stated that "any mental limitations in [Plaintiff] that Dr. Pierson has identified are accounted for by [Plaintiff's] residual functional capacity, which restricts [Plaintiff] to simple work, some moderate socialization limitations, and some limitations in dealing with stress."  (*Id.*)

To be sure, Dr. Pierson opined Plaintiff had "moderate" limitations in her activities of daily living, which wouldn't necessarily preclude functioning in that area; however, Dr. Pierson's limitations in all other areas were far more restrictive than can be accommodated with a limitation to simple work with additional limitations in socialization and dealing with stress.  Further, based on Dr. Pierson's limitations, Plaintiff's mental impairment could meet Listing 12.04.[7]  Therefore, the ALJ erred his rationalization that

---

[7]    12.04 *Affective disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
A. Medically documented persistence, either continuous or intermittent, of one of the following: 1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; or 2. Manic syndrome characterized by at least three of the following: a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND B.

any restrictions imposed by Dr. Pierson were accounted for in his mental RFC determination. Remand is recommended for a proper evaluation and analysis of Dr. Pierson's medical source statements.

### B.     Duty to Develop the Record

The ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. § 416.912(d). This duty exists even when a plaintiff is represented by counsel or representative. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Reviewing courts have also held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* No. 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012). Also, an ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. Where the source's opinion includes all of the factors set forth in 20 C.F.R. § 416.913[8] and there is no indication that further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

---

Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration; OR C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Part 404, Subpart P, App. 1.

[8]     Pursuant to 20 C.F.R. § 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

Plaintiff argues the ALJ failed to develop the record because there was a six month lapse in treatment, indicating an "obvious gap" in the record. (Dkt. No. 12 at 25 [Pl.'s Mem. of Law].) At Plaintiff's hearing on December 20, 2012, the ALJ inquired of Plaintiff's counsel if the record was complete. (T. 70-71.) Plaintiff's counsel indicated that absent Plaintiff's recent emergency room visit the record was complete. (T. 71.) At Plaintiff's subsequent hearing on April 1, 2013, the ALJ again inquired of Plaintiff's counsel if the record was complete. (T. 49.) Plaintiff counsel answered, "the record's complete." (*Id.*)

Here, the ALJ satisfied his duty to develop the record. The record contained three medical source statements from Plaintiff's treating mental health providers as well as treatment notations. There was no indication from the record that the records were incomplete, or that the gap in treatment was due to missing records; further, Plaintiff's counsel clearly indicated on two occasions that the record was complete. However, as remand is recommended, this report and recommendation should not be read as to preclude the ALJ from contacting Plaintiff's mental health providers to obtain additional information or clarification if the ALJ finds it necessary.

## C. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ is required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the

applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Plaintiff argues the ALJ erred in his step five determination because the hypothetical posed to the vocational expert did not represent an accurate picture of Plaintiff's limitations.  (Dkt. No. 12 at 23 [Pl.'s Mem. of Law].)  Because remand is recommended for a proper evaluation of the medical opinion evidence in the record, it is also recommended that the ALJ conduct a new evaluation at step five based on his re-evaluation of the medical opinion evidence in the record.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 1, 2016

William B. Mitchell Carter
U.S. Magistrate Judge