UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELIZABETH ABAR,

                        Plaintiff,

v.                                                           7:15-CV-0095
                                                             (GTS/WBC)
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOC'Y OF                              VICTORIA M. ESPOSITO, ESQ.
NORTHEAST NEW YORK – ALBANY
  Counsel for Plaintiff
55 Colvin Avenue
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.                     ANDREEA L. LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Elizabeth Abar

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are (1) the Report and Recommendation of a

United States Magistrate Judge, filed on February 1, 2016, recommending that Plaintiff's motion

for judgment on the pleadings be granted, and that Defendant's motion for judgment on the

pleadings be denied, (2) Defendant's objections to the Report and Recommendation, and (3)

Plaintiff's response to Defendant's objections. (Dkt. Nos. 15-17.) For the reasons set forth below, the Court respectfully declines to adopt the Report and Recommendation and affirms the Commissioner's decision.

## I.    DEFENDANT'S OBJECTIONS

Generally, Defendant makes four arguments in objection to the Magistrate Judge's Report and Recommendation. (Dkt. No. 16 at 2-10.)

First, Defendant addresses the Magistrate Judge's finding that the Administrative Law Judge ("ALJ") erred in assessing the opinion of consultative psychological examiner, Dennis Noia, Ph.D., because (1) the ALJ's statement that Dr. Noia's opinion supported the RFC indicates that the ALJ's decision to afford significant weight to the opinion "rests on circular reasoning," and (2) "this Court was unable to decipher the ALJ's reasoning for affording 'significant weight' to Dr. Noia's opinion, or even if the ALJ adhered to the factors outlined in the Regulations." (*Id.* at 2-4.) Defendant argues that the Court should reject this finding because the Magistrate Judge disregarded the ALJ's analysis, which complied with the regulatory factors. (*Id.*) Within this argument, Defendant notes that Plaintiff did not challenge the ALJ's decision to afford significant weight to Dr. Noia's opinion and that, because the Magistrate Judge raised the issue *sua sponte*, Defendant could not effectively respond to it. (*Id.* at 4.)

Second, Defendant addresses the Magistrate Judge's finding that the ALJ erred in affording considerable weight to the opinion of State agency psychological consultant, T. Bruni, Psy.D., dated November 17, 2011, because the opinion was based on a "stale" medical record that did not include (1) the most recent opinion from supervising psychiatrist, Elizabeth Pierson, M.D., from Gouverneur Mental Health Clinic ("GMHC"), dated November 29, 2012, or (2) the

Emergency Room records from Claxon-Hepburn Medical Center, dated December 9, 2012. (*Id.* at 2, 4-5, 7.) Defendant argues that the Court should reject this finding because (1) Dr. Bruni's opinion considered Plaintiff's mental health treatment records from Gouverneur Mental Health Clinic ("GMHC"), as well as Dr. Noia's consultative examination and opinion, (2) the ALJ complied with the regulations in assessing Dr. Noia's opinion, and (3) the ALJ considered the complete medical record, including Dr. Pierson's opinion, which the ALJ properly determined was entitled to little weight. (*Id.*)

Third, Defendant addresses the Magistrate Judge's finding that the ALJ erred in affording little weight to the opinion of GMHC supervising psychiatrist, Dr. Pierson, because the ALJ's analysis "was inadequate." (*Id.* at 4-9.) Defendant argues that the Court should reject this finding because the Magistrate Judge did not address the ALJ's comprehensive analysis of Dr. Pierson's opinion, which complied with the regulations. (*Id.*)

Fourth, and finally, Defendant addresses the Magistrate Judge's finding that the Court could not determine whether substantial evidence supported the ALJ's mental residual functional capacity ("RFC") assessment because there was a "reasonable basis for doubt" as to whether correct legal principles were applied. (*Id.* at 1, 8-9.) Defendant argues that the Court should reject this finding because the Magistrate Judge did not apply the deferential standard of review, and the ALJ's RFC assessment should have been upheld. (*Id.*)

## II.    PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS

Generally, Plaintiff makes four arguments in her response. First, Plaintiff argues that Defendant's objections to the Magistrate Judge's finding that the ALJ erred in assessing Dr. Pierson and Dr. Bruni's opinions repeat arguments from Defendant's initial brief and, therefore, these portions of the Report and Recommendation should be reviewed for clear error only. (Dkt. No. 17 at 2-3.)

Second, Plaintiff argues that the Magistrate Judge's finding that the ALJ erred in assessing Dr. Pierson and T. Bruni's opinion should be accepted because the Magistrate Judge's assessment of the opinions was not clearly erroneous. (*Id.* at 3-4.)

Third, Plaintiff argues that the Magistrate Judge's finding that the ALJ erred in assessing Dr. Noia's opinion should be reviewed for clear error only and adopted because the Magistrate Judge's recommendation is not clearly erroneous. (*Id.* at 4-5.)

Fourth, and finally, Plaintiff argues in the alternative that the Magistrate Judge's finding that the ALJ erred in assessing Dr. Noia's opinion should be adopted in the event that the Court conducts a *de novo* review of this portion of the Report and Recommendation because it is unclear whether the ALJ applied the appropriate legal standard in evaluating the mental opinion evidence of record.

## III. APPLICABLE LEGAL STANDARD

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[1] When performing such a *de novo* review, "[t]he judge may . . . receive further evidence. . . ." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider

---

[1]    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[2] Similarly, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the

---

[2]      *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3]  Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review.  Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.  When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Id*.[4]

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

## IV.  ANALYSIS

While Defendant's objections somewhat reiterate her arguments presented in her initial brief, the Court finds that the objections constitute specific challenges to the Report and Recommendation, as discussed in Part I. of this Decision and Order.  (*Compare* Dkt. No. 16 *with* Dkt. No. 13.)  Therefore, the Court conducts a *de novo* review of the portions of the Magistrate Judge's Report and Recommendation addressed in Defendant's objections.  After carefully

---

[3]     *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[4]     *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

reviewing the relevant filings in this action, the Court respectfully declines to adopt the

Magistrate Judge's recommendation that this matter be remanded for reevaluation of the mental

opinion evidence for the reasons stated in Defendant's objections.  (Dkt. No. 16.)  To those

reasons, the Court adds the following analysis.  For the ease of analysis, Defendant's objections

will be reorganized and consolidated below.

**A.      Whether the ALJ Erred in Assessing the Mental Opinion Evidence of Record**

**i.      Consultative Psychological Examiner, Dennis M. Noia, Ph.D.[5]**

As indicated above in Part I. of this Decision and Order, the Magistrate Judge found that

(1) the ALJ's statement that Dr. Noia's opinion supported the RFC indicates that the ALJ's

decision to afford significant weight to the opinion "rests on circular reasoning," and (2) "this

Court was unable to decipher the ALJ's reasoning for affording 'significant weight' to Dr.

Noia's opinion, or even if the ALJ adhered to the factors outlined in the Regulations."  (Dkt. No.

15 at 14.)

The Court finds that the Magistrate Judge's findings focus entirely on a single sentence

from the ALJ's decision and overlook the remainder of the ALJ's analysis, which addresses

every regulatory factor applicable to Dr. Noia's opinion.  (Dkt. No. 15 at 14) (citing T. 37.)  For

the ease of analysis, the Magistrate Judge's findings will be addressed out of order below.

When controlling weight is not afforded to the opinion of a treating physician, or when

assessing a medical opinion from another source (such as consultative examiner Dr. Noia), the

---

[5]      On November 29, 2012, Dr. Noia diagnosed Plaintiff with panic disorder, and opined that Plaintiff
appeared to be having some difficulty dealing with stress.  (T. 363.)  Dr. Noia further opined that, vocationally,
Plaintiff appeared capable of understanding and following simple instructions and directions, performing simple and
some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly
attending to a routine and maintaining a schedule, and learning new tasks.  (T. 362-63.)  Dr. Noia opined that
Plaintiff appeared to be capable of making appropriate decisions, and relating to and interacting moderately well
with others.  (*Id.*)

ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship, including the length, nature, and extent of the treatment relationship, if applicable , (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.  20 C.F.R. § 404.1527(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).  When an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to explicitly review each and every regulatory factor.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Although the ALJ was not required to explicitly review each and every regulatory factor, in this case, the ALJ *did* explicitly review each and every regulatory factor in evaluating Dr. Noia's opinion.  More specifically, the ALJ identified Dr. Noia as a consultative psychological examiner and reasoned that he afforded significant weight to Dr. Noia's opinion "based on Dr. Noia's program and professional expertise, as well as his examination of the claimant."  (T. 37.) Thus, in that single sentence alone, the ALJ provided four pertinent reasons for affording significant weight to Dr. Noia's opinion under the regulations.  (*Id.*)

First, the ALJ noted that Dr. Noia had examined Plaintiff.  20 C.F.R. § 416.927(c)(1) (stating that, generally, more weight is afforded to an opinion from an examining source than to an opinion from a nonexamining source).  Second, the ALJ considered Dr. Noia's disability program expertise.  20 C.F.R. § 416.927(c)(6) (stating that  an adjudicator will consider factors such as the source's familiarity with the disability program).  Third, the ALJ considered Dr. Noia's professional expertise as a psychologist.  20 C.F.R. § 416.927(c)(5) (stating that, generally, more weight is afforded to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist).  Fourth, the ALJ

considered the supportability of Dr. Noia's opinion with his examination notes.[6]  20 C.F.R. §

416.927(c)(3) (stating that, the more a medical source presents evidence to support an opinion,

particularly medical signs and laboratory findings, the more weight will be afforded to the

opinion).  Finally, the ALJ considered the consistency of Dr. Noia's opinion with the record as a

whole, including Plaintiff's activities and Dr. Bruni's opinion, thus considering the fifth

remaining factor.[7]  20 C.F.R. § 416.927(c)(4) (stating that, generally, the more consistent an

opinion is with the record as a whole, the more weight will be afforded to the opinion).

Turning to the Magistrate's Judge first finding, the Magistrate Judge relies on the ALJ's

statement that "Dr. Noia's assessment of [Plaintiff's] mental functioning supports an ability on

the part of [Plaintiff ] to perform simple work with some moderate socialization limits and some

limitations in dealing with stress, all of which is consistent with the residual functional capacity

that the undersigned has formulated for [Plaintiff]."[8]  (Dkt. No. 15 at 14) (citing T. 37).  The

---

[6]     The ALJ noted that, upon examination, Dr. Noia observed that Plaintiff's attention and concentration were intact, and Plaintiff's thought processes were coherent and goal oriented.  (T. 31.)  The ALJ noted Dr. Noia's observations that Plaintiff had clear sensorium and full orientation, and that Plaintiff exhibited only mildly impaired recent and remote memory skills, and no disordered thinking.  (*Id.*)  The ALJ noted that Dr. Noia observed that Plaintiff's speech intelligibility was fluent, and that Plaintiff's expressive language and receptive language were adequate.  (*Id.*)  The ALJ noted that Dr. Noia observed that Plaintiff's demeanor and responsiveness to questions were cooperative, and that Plaintiff's manner of relating, social skills, and overall presentation were adequate.  (T. 30.)  Finally, the ALJ noted that Dr. Noia observed that Plaintiff reported that she got along well with friends and family.  (*Id.*)

[7]     The ALJ found that Plaintiff's reported activities indicate that she "is clearly able to engage in a wide range of independent daily activities."  (T. 26-27.)  Plaintiff reported that she was able to dress, bathe, and groom herself on a regular basis, cook and prepare food, perform chores and general cleaning, do laundry, sometimes drive, and take care of her five young children and her autistic nephew.  (T. 30, 37.)  The ALJ further noted that Plaintiff reported that she could manage money and spent time during the day reading, watching television, and listening to the radio.  (T. 31.)  Plaintiff reported that she cooked a Thanksgiving meal for about 30 people, shopped on Black Friday, and had three new horses that she would be training.  (T. 30, 362, 421, 455.)

[8]     Reviewing courts have found that, "when medical evidence demonstrates that a claimant can engage in simple routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a plaintiff to only unskilled work sufficiently accounts for such limitations."  *See Bartell v. Comm'r of Soc. Sec.,* 13-CV-0843, 2014 WL 4966149, at *3 (N.D.N.Y. Sept. 30, 2014) (finding that the ALJ's RFC assessment limiting Plaintiff to simple unskilled work is consistent with (1) her determination that the plaintiff had moderate difficulties of concentration, persistence, and pace, and (2) a medical opinion indicating that, despite the plaintiff's limitations,

9

Magistrate Judge found that "the ALJ's reasoning for affording Dr. Noia's opinion [significant weight] caused this Court to pause." (*Id.*) The Magistrate Judge acknowledged that the ALJ's RFC assessment supported the ALJ's RFC determination, but found that the ALJ's decision to afford significant weight to Dr. Noia's opinion "rests on circular reasoning." (*Id.*)

In support of this finding, the Magistrate Judge cited a case finding that the ALJ's "reasoning was circular and flawed" when she afforded significant weight to a medical opinion because "it was consistent with her RFC." *Faherty v. Astrue,* 11-CV-2476, 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013). If the ALJ had indeed afforded Dr. Noia's opinion significant weight merely because it was consistent with the ALJ's RFC determination, then his reasons would have been circular. However, the ALJ did not do so but properly analyzed every applicable regulatory factor in explaining his reasoning for affording significant weight to Dr. Noia's opinion, as discussed above. Accordingly, we are able to decipher the basis of the ALJ's decision and recognize that the ALJ properly adhered to the regulatory factors.

### ii.     State Agency Psychological Reviewer, T. Bruni, Psy.D.[9]

As indicated in Part I. of this Decision and Order, the Magistrate Judge found that the ALJ erred in affording considerable weight to the opinion of Dr. Bruni, dated November 17, 2011, because the opinion was based on a "stale" medical record that did not include (1) the

---

he could perform the basic activities of unskilled work); *accord, Woodmancy v. Colvin,* 12-CV-0991, 2013 WL 5567553, at *4 (N.D.N.Y. Oct. 9, 2013) (holding that the ALJ did not err in failing to make specific accommodations for a plaintiff's impaired ability to cope with work stress in the RFC because the ALJ relied on the opinion of a medical expert who opined that the plaintiff could still perform basic work tasks despite his difficulty handling stressors).

[9]     On November 17, 2011, Dr. Bruni reviewed Plaintiff's medical records and assessed Plaintiff's mental functional capacity. (T. 371-73.) Dr. Bruni opined that Plaintiff was "not significantly limited" in adaptation, and was "not significantly limited" to "moderately limited" in understanding and memory, sustained concentration and persistence, and social interaction. (T. 371-72.) Dr. Bruni concluded that, despite Plaintiff's severe psychiatric impairment, Plaintiff retained the capacity to understand and follow directions, sustain attention and concentration for simple tasks, respond and relate adequately to others, and adapt to simple changes. (T. 373.)

most recent opinion from supervising psychiatrist, Dr. Pierson, from GMHC, dated November 29, 2012, or (2) the Emergency Room records from Claxon-Hepburn Medical Center, dated December 9, 2012.[10]  (Dkt. No. 15, at 11-13.)

The two cases cited by the Magistrate Judge for the staleness issue doe not mandate rejection of the ALJ's finding because the cases (1) stand merely for the point of law that timeliness of evidence is a *factor* that courts have cited in finding a lack of substantial evidence in the *record*, and (2) involved a lapse in time much lengthier than the 22-day lapse in this case (*i.e.,* between T. Bruni's opinion of November 17, 2011, and Dr. Pierson's medical source statement of November 29, 2011, and the Claxton-Hepburn Medical Center emergency room records of December 9, 2011).  *See Jones v. Colvin,* 14-CV-6313, 2015 WL 4628972, at *3-5 (W.D.N.Y. Aug. 3, 2015) (basing finding of staleness on failure to consider four years of medical records); *Acevedo v. Astrue,* 11-CV-8853, 2012 WL 4377323, at *16 (S.D.N.Y. Sept. 4, 2012) (basing finding of staleness on failure to consider 18 months of medical records). Moreover, here, the case record was complete at the time the ALJ issued his decison, and the ALJ considered both Dr. Pierson's medical source statement of November 29, 2011, and Claxton-Hepburn Medical Center emergency room records of December 9, 2011.  (T. 35-36, 38.) Further, Dr. Bruni's opinion considered Plaintiff's prior mental health treatment records from GMHC, as well as Dr. Noia's consultative examination and opinion.  (*Id.*)

The ALJ afforded considerable weight to Dr. Bruni's opinion based on Dr. Bruni's program and professional expertise, and noted that the opinion was consistent with Dr. Noia's opinion and Plaintiff's reported activities.  (T. 32, 37-38.)

---

[10]     The Court notes that it agrees with the Magistrate Judge's finding that the record indicated that Dr. Bruni was a licensed psychologist and therefore, is an acceptable medical source, for the reasons stated by the Magistrate Judge.  (Dkt. No. 15 at 9-10.)

In sum, the Court finds that the ALJ properly applied the regulatory factors in evaluating the opinions of Dr. Noia and Dr. Bruni by considering each source's professional credentials and disability program expertise, and the consistency of their opinions with one another and with other substantial evidence in the record. (T. 17-23.) Moreover, the ALJ considered the additional factors applicable to Dr. Noia's opinion by citing Dr. Noia's examining relationship with Plaintiff and examination notes in support of his opinion, as discussed above. (*Id.*) Where an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation. *Atwater*, 512 F. App'x at 70 (2d Cir. 2013).

Further, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") Finally, the regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record." *Diaz v. Shalala,* 59 F.3d 307, 313 n. 5 (2d Cir. 1995.)

For these reasons, the ALJ's assessment of the opinions of Dr. Noia and Dr. Bruni was supported by substantial evidence, and remand is not required on this basis.

### iii.    Supervising Psychiatrist, Elizabeth Pierson, M.D., and Treating Nurse Practitioner, Jill Brabant, A.R.N.P.[11]

As indicated in Part I. of this Decision and Order, the Magistrate Judge found that the ALJ erred in affording little weight to the opinion of Dr. Pierson because the ALJ's analysis "was inadequate," and found that the ALJ afforded little weight to Dr. Pierson's opinion "for various reasons, namely stating Dr. Pierson's findings were inconsistent with the findings of Dr. Noia and T. Bruni."  (Dkt. No. 15, at 19.)  However, upon review, it is apparent that the ALJ's comprehensive analysis of Dr. Pierson's opinion complied with the regulations.  (*Id.*)

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion.  *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Here, the ALJ afforded little weight to Dr. Pierson's opinion, reasoning that the severe functional limitations opined by Dr. Pierson "are simply not confirmed by the balance of the record."  (T. 32, 38.)  The ALJ provided a thorough analysis and properly applied the regulatory factors in assessing Dr. Pierson's opinion, as set forth below.

---

[11]    On September 26, 2011, Dr. Pierson opined, in pertinent part, that Plaintiff was unable to work. (T. 38.)  On November 3, 2011, Dr. Pierson opined, in pertinent part, that Plaintiff was unable to work due to her anxiety.  (*Id.*)  On November 29, 2012, Dr. Pierson and Ms. Brabant provided a joint opinion of Plaintiff's work-related mental abilities and limitations.  (T. 463-64.)  More specifically, Dr. Pierson and Ms. Brabant opined that Plaintiff had "marked" to "severe" limitations in her abilities to (1) understand, remember, and carry out instructions, (2) respond appropriately to supervisors, coworkers, and customary work pressures, (3) satisfy an employer's normal quality, production, and attendance standards, and (4) perform simple and complex tasks on a sustained basis in a full-time work setting.  (T. 463-64.)

First, the ALJ considered Dr. Pierson's specialty in psychiatry, examination relationship and treatment relationship with Plaintiff, including the length, nature, and extent of that treatment. (T. 38.) Moreover, the ALJ acknowledged that, if Dr. Pierson were Plaintiff's treating psychiatrist, her opinion would normally be afforded controlling weight, as long as her assessment was supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in Plaintiff's case record. (*Id.*)

In analyzing that relationship, the ALJ noted that, on February 11, 2011, Plaintiff began outpatient mental health treatment at GMHC for bipolar disorder, panic disorder without agoraphobia, and post-traumatic stress disorder. (T. 34.) The ALJ also noted that Plaintiff's treatment consisted of psychotherapy and psychotropic medication, and that Plaintiff was usually treated by a licensed social worker or a nurse practitioner at GMHC. (*Id.*) However, the ALJ noted that, while Dr. Pierson was a supervising psychiatrist at GMHC, the record contains no evidence that Dr. Pierson ever examined Plaintiff. (*Id.*) As a result, the ALJ concluded that, while Plaintiff has a history of treatment at GMHC, "the mere existence of such a longitudinal history is insufficient by itself to warrant according Dr. Pierson's opinion controlling weight." (T. 32.) Moreover, with respect to Dr. Pierson's opinion of November 29, 2012, which was cosigned by Ms. Brabant, the Court notes that an opinion from a nurse practitioner is not entitled to any particular weight under the regulations. 20 C.F.R. § 416.1913(a), 416.927(b).

Second, the ALJ considered the supportability of Dr. Pierson's opinion in light of the evidence. For example, the ALJ noted that, while Plaintiff's psychiatric symptoms increased at times, she had not been taking her medications as prescribed during these times. (T. 35.) Moreover, the ALJ found "no support in the [GMHC] treating notes and reports" for Dr.

Pierson's opinion that Plaintiff could not work, or for Dr. Pierson's opinion that Plaintiff had "marked" to "severe" limitation in her mental functioning. (T. 38.)

Third, the ALJ considered the inconsistencies between Dr. Pierson's opinion and the record as a whole, including Dr. Pierson's own assessment notes regarding Plaintiff's mental functioning. (*Id.*) The ALJ noted that, on November 3, 2011, Dr. Pierson stated that Plaintiff's mood was stable, that she was responding well to her medication, and that she had made good progress in therapy. (*Id.*) The ALJ further noted that, on April 25, 2012, a treating social worker at GMHC reported that Plaintiff was handling stress well, that her mood was stable on medication, and that her anxiety was not excessive. (*Id.*)

The ALJ noted that, since Plaintiff began treatment at GMHC, she was assessed with global assessment of functioning ("GAF") scores ranging from 55 to 58.[12] (*Id.*) The ALJ determined that these GAF scores indicated no greater than moderate functional limitations and did not support Dr. Pierson's opinion that Plaintiff had "marked" to "severe" limitations in her mental ability to perform work-related activities. (*Id.*) Accordingly, the ALJ concluded that Dr. Pierson's opinion was not consistent with the "balance of the record," including Plaintiff's treatment notes from GMHC, Plaintiff's activities of daily living, and the opinions of Dr. Pierson and Dr. Bruni discussed below in Part IV.A.ii. of this Decision and Order. (T. 32-33, 38.)

The ALJ found that Plaintiff's reported activities indicate that she "is clearly able to engage in a wide range of independent daily activities" that are inconsistent with Dr. Pierson's

---

[12]    The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter,* 377 F.3d 183, 186 n. 1 (2d Cir. 2004). A GAF score of 51 to 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers.) *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (DSM-IV).

restrictive opinion of Plaintiff's abilities. (T. 26-27 32-33, 38.) Here, Plaintiff reported that she was able to dress, bathe, and groom herself on a regular basis, cook and prepare food, perform chores and general cleaning, do laundry, sometimes drive, and take care of her five young children and her autistic nephew. (T. 30, 37.) The ALJ further noted that Plaintiff reported that she could manage money and spent time during the day reading, watching television, and listening to the radio. (T. 31.) Plaintiff reported that she cooked a Thanksgiving meal for about 30 people, shopped on Black Friday, and had three new horses that she would be training. (T. 30, 362, 421, 455.) Accordingly, the Court agrees that Dr. Pierson's restrictive opinion conflicted with Plaintiff's reported activities. *See Roma v. Astrue,* 468 F. App'x 16 (2d Cir. 2012) (finding that, in declining to afford controlling weight to a treating physician's opinion, the ALJ properly noted that the opinion that the plaintiff could not work conflicted with the plaintiff's testimony that he could perform a reasonably broad range of light, non-stressful activities at or near his home, including, driving, reading, sending email, and independently performing activities of daily living).

The Court finds that the ALJ's decision to afford little weight to Dr. Pierson's opinion was supported by substantial evidence. The ALJ properly noted that Dr. Pierson's statements of September 26, 2011, and November 3, 2011, that Plaintiff was unable to work were statements on an issue reserved for the Commissioner. (T. 38.) A physician's statement that a plaintiff is disabled is a statement on an issue reserved for the Commissioner and is never entitled to controlling weight or special significance. 20 C.F.R. § 416.927(d)(1); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

Additionally, the ALJ properly applied the regulations in evaluating Dr. Pierson's opinion. As discussed above, the ALJ considered Dr. Pierson's specialty in psychiatry, examination and treatment relationship with Plaintiff, and cited inconsistencies between his opinion and other substantial evidence in the record pursuant to 20 C.F.R. § 416.927(c). (T. 29-38.) When an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every regulatory factor. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, when a plaintiff challenged the ALJ's failure to review explicitly each regulatory factor, "no such slavish recitation of each and every factor" was required when the ALJ's reasoning and adherence to the regulation was clear). Further, when the evidence of record permits the Court "to glean the rationale of an ALJ's decision," the ALJ is not required to discuss in depth every piece of evidence contained in the record. *LaRock ex. rel. M.K. v. Astrue,* 10-CV-1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983) [internal quotation marks omitted]).

For these reasons, the ALJ's assessment of Dr. Pierson's opinion was supported by substantial evidence, and remand is not required on this basis.

**B.     Whether the ALJ's Mental RFC Determination Was Supported by Substantial Evidence**

As indicated above in Part I. of this Decision and Order, the Magistrate Judge found that "the Court could not determine whether substantial evidence supported the ALJ's mental RFC assessment because there was a 'reasonable basis for doubt' as to whether correct legal principles were applied." (Dkt. No. 15 at 16.) However, the Court finds that the ALJ applied the correct legal principles in assessing the opinion evidence for the reasons discussed in Part.IV.A.ii. of this Decision and Order. Accordingly, the Court also finds that the ALJ's mental

RFC was supported by substantial evidence, including the opinions of Dr. Noia and Dr. Bruni

discussed in Part IV.A.ii. of this Decision and Order.

Here, the ALJ determined that Plaintiff had the mental RFC

> to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; can relate to and interact with others to the extent necessary to carry out simple tasks, but should avoid work requiring more complex interaction or joint efforts to achieve work goals; she should not have interaction with the public; and she can handle reasonable levels of simple work-related stress, in that she can make simple decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others.

(T. 33.)

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Work-related mental activities generally

required by competitive, remunerative work include the abilities to understand, carry out, and

remember instructions; use judgment in making work-related decisions; respond appropriately to

supervision, co-workers and work situations; and deal with changes in a routine work setting."

SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

It is the duty of the ALJ, not a medical source, to formulate a plaintiff's RFC. 20 C.F.R.

§ 416.945. In formulating a plaintiff's RFC, an ALJ is not required strictly to adhere to the

entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony."  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

For these reasons, the Court determines that the ALJ's mental RFC assessment was supported by substantial evidence, and remand is not necessary on this basis.

### C.       Whether the ALJ Erred in Relying on the Vocational Expert's Testimony at Step Five

In his Report and Recommendation, the Magistrate Judge declined to reach this issue in light of his recommendation to remand the matter.  (Dkt. No. 15, at 22 [R & R].)  In the interest of judicial efficiency, the Court will address this issue.

Plaintiff argues that the ALJ erred at step five by relying on vocational expert testimony that was based on an incomplete hypothetical question and conflicted with the Dictionary of Occupational Titles ("DOT").  (Dkt. No. 12, at 23-24 [Pl.'s Mem. of Law].)  Defendant argues that the ALJ's reliance on the vocational expert testimony was proper.  (Dkt. No. 13, at 17-20 [Def.'s Mem. of Law].)  After carefully considering the matter, the Court finds that the ALJ's

reliance on the vocational expert testimony was proper for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 17-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there is other work that exists in significant numbers in the national economy that a plaintiff can perform based on the plaintiff's RFC, age, education, and past relevant work. *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004). The Commissioner can usually establish that there is other work that a plaintiff can perform by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from nonexertional limitations that significantly limit the plaintiff's employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]). However, "the mere existence of a non-exertional limitation does not automatically preclude reliance on the guidelines." *Zabala v. Astrue,* 595 F.3d 402, 410-11 (2d Cir. 2010) (citing *Bapp,* 802 F.2d at 603.) A plaintiff's range of potential employment is significantly limited when the plaintiff "suffers from the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Baldwin*, 2009 WL 4931363, at *27.

Here, the ALJ provided a hypothetical question to the vocational expert that included Plaintiff's abilities and restrictions set forth in the RFC to determine whether she could perform other existing work in the national economy. (T. 39-40.) The vocational expert testified that,

based on Plaintiff's RFC, age, education, and work experience, she could perform jobs that exist in significant numbers in the national economy. (*Id.*)

First, Plaintiff argues that the ALJ erred in relying on vocational expert testimony that was in response to a hypothetical that did not accurately represent her limitations. (Dkt. No. 12, at 23-24 [Pl.'s Mem. of Law].) Because the Court finds no error in the ALJ's RFC assessment, we conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on the RFC. *Dumas*, 712 F.2d at 1553-54 (approving a hypothetical question to a vocational expert that was based on an assumption supported by substantial evidence in the record).

Second, Plaintiff argues that the vocational expert testimony conflicted with the DOT. (Dkt. No. 12, at 24 [Pl.'s Mem. of Law].) The ALJ's physical RFC determination limited Plaintiff to occasional reaching, pushing, pulling, grasping, or performing fine manipulation with the right hand and arm, but stated that Plaintiff had no limitation using her left hand and arm. (T. 33.) Plaintiff argues that the vocational expert's testimony was inconsistent with the DOT because the vocational expert identified jobs that contemplate bimanual dexterity. (Dkt. No. 12, at 24 [Pl.'s Mem. of Law].)

As an initial matter, the Second Circuit has held that a vocational expert's deviations from the DOT are not necessarily erroneous or in conflict with the DOT. *Jasinski v. Barnhart,* 341 F.3d 182, 185 (2d Cir. 2003). As the Second Circuit has explained, "many specific jobs differ from those jobs as they are generally performed, and the expert may identify those unique aspects without contradicting the Dictionary." *Jasinski,* 341 F.3d at 185. SSR 00-4p states as follows:

Occupational evidence provided by a VE or VS [vocational expert or vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled . . . . The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than the DOT information.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

SSR 00-4p sets forth examples of reasonable explanations for conflicts that may provide a basis for an ALJ to rely on evidence from a vocational expert. *Id.* For example, an ALJ may rely on evidence from a vocational expert that includes information not listed in the DOT, because a vocational expert may have additional information about a particular job's requirements based on the vocational expert's experience. *Id.*

Here, the inconsistency between the vocational expert's opinion and the DOT was properly resolved on the record. (T. 40, 59-60.) During the hearing, the ALJ asked the vocational expert whether his testimony was consistent with the DOT. (T. 60.) The vocational expert explained that his testimony was consistent with the DOT "where the DOT provides us guidance," but noted that the DOT does not provide guidance where, as here, there was a limitation in only one extremity. (T. 59-60.) The vocational expert further explained that, because this information was not included in the DOT, he relied on his own professional experience to resolve the inconsistency. (T. 60.) More specifically, the vocational expert testified that, based on his experience, Plaintiff would be able to perform the work identified notwithstanding her limitation to occasional use of one upper extremity, regardless of whether

she was limited on the dominant or nondominant side.  (*Id.*)  Accordingly, the ALJ reasonably

relied on the vocational expert's experience-backed explanation in resolving the inconsistency

between the vocational expert's testimony and the DOT.  (T. 40, 59-60.)  SSR 00-4p; *Sanfilippo*

*v. Astrue,* 10-CV-0987, 2011 WL 2635732, at *4 (E.D.N.Y. July 5, 2011).

For these reasons, the ALJ's step five determination was supported by substantial

evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that the Magistrate Judge's Report and Recommendation (Dkt. No. 15) is

**REJECTED**; and it is further

**ORDERED** that the Commissioner's determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED.**

Dated:  March 31, 2016
          Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge